Robert Lee BURNETT *v.* STATE of Arkansas

CR 89-220                                          790 S.W.2d 137

Supreme Court of Arkansas
Opinion delivered May 14, 1990
[Rehearing denied June 11, 1990.]

*Sherman and James*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Robert Lee Burnett was convicted of the beating and stabbing death of Rhonda Dobson, a Brinkley, Arkansas convenience store clerk. Satisfied that an impartial jury could not be impanelled in Monroe County, the trial court granted a change of venue to Cross County, where Burnett was tried, convicted and sentenced to death. Evidence introduced by the state included a confession Burnett gave to the police shortly after his arrest, and the identification of Burnett by a customer, Ms. Barbara Kuykendall (now Mrs. Short),[1] as the man she saw run from the store immediately after the murder.

Burnett appealed, insisting he was seized at his home in violation of the Fourth Amendment and that evidence obtained as a result of his seizure should not have been used against him. We reversed his conviction, upholding his contention that the confession and the lineup identification were acquired in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. *Burnett v. State*, 295 Ark. 401, 749 S.W.2d 308 (1988). While we held the lineup was not suggestive, we could not determine whether the in-court identification of Burnett by Ms. Kuykendall was dependent on the lineup and, hence, unreliable. *United States v. Wade*, 388 U.S. 218 (1967).

On remand the trial court was instructed to conduct a pretrial hearing to determine whether the courtroom identification of Burnett was tainted by his illegal seizure. *Wright v. State*, 258 Ark. 651, 528 S.W.2d 905 (1979). That was done and the trial court allowed the courtroom identification by Mrs. Short. Robert Lee Burnett has again appealed from his conviction and life sentence without parole. His single argument for reversal is that the trial court erred in failing to suppress his identification as clearly tainted by the lineup procedures. *Wong Sun v. United States*, 371 U.S. 471 (1963). We affirm the judgment and sentence appealed from.

---

[1] Ms. Kuykendall became Mrs. Short between the two trials in this case.

At the suppression hearing following remand, Mrs. Short testified that at about 3:30 a.m. on July 10, 1986, she was seated in a pickup truck parked at the gas pumps of the convenience store. She was about twenty-five feet away from the entrance. She said a man suddenly emerged and ran from the store, jumped a nearby fence and disappeared. She described him as black, about 5'4" tall, wearing shorts or "cut-offs" and no shirt. He was "pretty slim" and the lower part of his face was thin, with a pointed chin. She identified Robert Burnett as the man she had seen. Robert Burnett did not testify at the hearing or at the trial. We are asked to overrule the trial court's denial of the motion to suppress Mrs. Short's courtroom identification of Robert Lee Burnett as the man who ran from the shop. For reasons to be stated we decline that request.

While we held in *Burnett I* that the lineup itself was not unduly suggestive, we left open the question of whether Mrs. Short's identification of Burnett before the jury on retrial was reliably based on her observations at the convenience store or her observations of him at the lineup, admittedly an inexact analysis.

In *United States* v. *Wade*, 388 U.S. 218 (1967), the Supreme Court listed a number of factors to be considered in determining whether the means by which witnesses may have acquired their observations or information are sufficiently distinguishable as to be purged from the taint of an earlier illegality. *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). The conclusion to be drawn from those and other relevant factors is dependent on the totality of the circumstances and even though prior identification may have been improper or suggestive, an in-court identification will not be suppressed if indicia of reliability are found to independently exist. *Manson* v. *Brathwaite*, 432 U.S. 98 (1977).

The factors mentioned in *United States* v. *Wade, supra*, include the following: the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, the lapse of time between the alleged act and the lineup identification. *United States* v. *Wade*, 388 U.S. at 241. A factor noted in *Neil* v.

*Biggers*, 409 U.S. 188 (1972), is the degree of certainty which a witness professes to possess that the perpetrator and the defendant are the same individual.

We have applied those and other relevant factors frequently since *Wade* was decided: *See*, e.g., *Maulding* v. *State*, 296 Ark. 328, 757 S.W.2d 916 (1988); *Frensley* v. *State*, 291 Ark. 268, 724 S.W.2d 165 (1987); *Cook* v. *State*, 283 Ark. 246, 675 S.W.2d 366 (1984); *Hogan* v. *State*, 280 Ark. 287, 657 S.W.2d 534 (1983).

Applying those factors to the instant case we note that Mrs. Short testified that she and the perpetrator looked directly at each other when he emerged from the store, that the lighting was good and there was nothing to obstruct her view. Moreover, her attention was heightened by the fact that she knew from his manner that "something was wrong." She watched the man run to an adjacent fence and jump over it. She described him to police as 5'4" or 5'5" and compared it to her own height of 5'3". She said he wore shorts of some kind, was shirtless and barefooted. His left hand was inserted inside a white sock and in his right hand he grasped a brown paper sack.[2] Mrs. Short said the man was "pretty slim," with a thin face and a pointed chin. It was this latter facial characteristic that Mrs. Short found most distinctive. Finally, she professed to entertain "no doubt at all" that Robert Burnett was the man she saw running from the convenience store.

The trial court evidently found Mrs. Short to be a credible witness and we take no exception. She did not hesitate to decline to supply information she did not possess or could not recall and readily admitted testimony from the previous hearing which the defense elicited. Clearly, she had some uncertainty as to the height of the man she saw, but by no means would that sort of discrepancy work to suppress her identification. *See Burnett I*, 295 Ark. at 410.

In sum, Mrs. Short had an unobstructed, direct view of the perpetrator under well-lighted conditions. She and the man made eye contact and her attention was keyed to her awareness that something unusual had occurred inside the store. There was

---

[2] White socks of similar, but not identical, weave were found at the scene and in the garbage can at Burnett's house.

a lapse of only a few hours between her observations at the scene and the lineup. Her description of the man she saw was an apt description of Robert Burnett. She admitted to no uncertainty as to her identification. Thus we cannot say the finding of the trial court is clearly erroneous, nor can we find a "very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 U.S. 377, 384 (1968).

■ We do not discount appellant's argument that Mrs. Short was permitted to observe Burnett alone before the lineup and her own acknowledgement, as appellant construes it, that her identification of Burnett was based on her observation of him at the lineup. We disagree that either point dictates reversal. As to the latter contention, Mrs. Short's cross-examination does, at least ostensibly, support the argument. But when her testimony in its entirety is read, we conclude that she did not understand the distinction the law makes between her observation of the defendant at the lineup as opposed to her avowed observation of him at the convenience store. We quote from the pertinent testimony in its entirety:

Q: Do you recall testifying at a pretrial hearing a couple of years ago?

A: Yes.

Q: Do you recall that?

A: Yes.

Q: And you were under oath, correct?

A: Yes.

Q: And you swore to tell the truth, correct?

A: Right.

Q: Do you recall a question being asked by the Prosecutor, let me ask you this, Mrs. Warren, when you identified him a moment ago for the Court, was your identification based on what you remember seeing of him coming out of the store or what you remembered from the lineup?

A: Yes.

Q: Do you remember that question?

A: Yes, I do.

Q: What was your response under oath, if you recall it?

A: I told him it was from the lineup.

Q: It was like picking him out of the lineup. Is that what you said at that pretrial hearing?

A: Yeah, because I remember his features and face.

Q: But your testimony at pretrial a couple of years ago was you remembered him as a result of picking him out of the lineup. Correct?

A: That's right.

Q: And does that still hold true today?

A: Well, the thing that stuck in my mind about this guy —

Q: Slim face?

A: Yeah, that's correct.

While we concede the ambiguity in this brief segment of Mrs. Short's testimony, we do not concede that she intended to say that she remembered Burnett because of the lineup and not because of the earlier contact. Indeed, the question itself was artfully limited to whether she remembered Burnett "as a result of picking him out of a lineup," omitting any qualifying words such as "rather than from the crime scene." It is not surprising that a lay witness fails to understand the differentiation between the two observations which the law attempts to impose under the *Wade* principle. Arguably such a distinction may well be a practical impossibility. *See* concurring/dissenting opinion of Justice Black, *United States* v. *Wade*, 388 U.S. at 248. ("How is a witness capable of probing the recesses of his mind to draw a sharp line between a courtroom identification due exclusively to an earlier lineup and a courtroom identification due to memory not based on the lineup?") We will not attempt a more definitive answer to the argument except to note that the trial judge, who heard the questions and the responses, as well as the inflections and demeanor, as they occurred, did not sustain that interpretation of Mrs. Short's testimony.

The other point is of greater concern. Mrs. Short said that

just before the lineup, she, her husband to be, his mother and another woman, whose name she did not know, were instructed by a police officer to walk past a room, to glance in but not stare. They did as instructed and she saw Robert Burnett alone in the room. They were not told that the man in the room was a suspect.

Neither the state nor the defense probed into this novel incident, nor made any attempt to find an explanation. No other witness was asked about it and neither side alluded to it in closing argument at the end of the hearing, though other points were argued in some depth. In short, while we are at a loss to explain it or to determine whether its purpose was proper or improper, we conclude that it must be weighed with the other factors in determining whether Mrs. Short's identification is to be sustained. On balance, we are persuaded the ruling of the trial court was not clearly erroneous because of her avowed certainty and because her initial description of the perpetrator bears a clear resemblance to the height, build and facial characteristics of Robert Burnett.

In reaching that result we note that courts generally have not been intolerant of the occasional confrontation or contact between a single suspect and a witness even when it occurred needlessly or unnecessarily. In *Neil* v. *Biggers, supra,* the suspect alone was viewed with two detectives by the victim and instructed to say "Shut up or I'll kill you." In *Stovall* v. *Denno,* 388 U.S. 293 (1967), the suspect was brought to the victim's hospital room handcuffed to a detective. He was the only black man in the room. In *Manson* v. *Brathwaite, supra,* the witness identified the defendant from a single photograph, with no explanation offered for the failure to utilize a lineup or a photographic array. Yet in these and factually similar cases the courtroom identification was upheld. Perhaps the only case to the contrary is *Foster* v. *California,* 384 U.S. 440 (1969), where the witness failed to identify Foster from a lineup, or except tentatively from a subsequent showup. Not until a third lineup was conducted was the witness able to muster a definite identification. As this court observed in *Robinson* v. *State,* 293 Ark. 51, 732 S.W.2d 159 (1987), "as the trial court stated in *Penn* v. *State,* 284 Ark. 234, 681 S.W.2d 307 (1984), the appellate court does not inject itself into the process of determining reliability unless there is a very substantial likelihood of misidentification." We do not

detect such a likelihood in this record.

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

For the reasons stated, the judgment and sentence are affirmed.

DUDLEY, NEWBERN, and PRICE, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Before approving a judgment which will put Robert Lee Burnett in prison for life without parole, we must decide whether the state presented clear and convincing evidence that the identification of him as the culprit by Barbara Short was reliable. See *Montgomery* v. *State*, 251 Ark. 645, 473 S.W.2d 885 (1971). The evidence on that issue consists of Mrs. Short's testimony and that of Officer Max Storey who was acting chief of police at Brinkley who participated in the investigation of the crime.

From our first opinion in this case it can be determined that Mrs. Short was unable to identify Burnett's photograph at the police station shortly after she had seen a black male, without shirt or shoes, running from the crime scene. She did, however, pick him out when a line-up was conducted and later identified him positively at the trial. While looking at the photographs she seemed to look more often at the picture of Burnett. On that basis, officers illegally seized Burnett at his home and brought him to the police station. We reversed and remanded the case with instructions to the trial court to determine before a second trial whether Mrs. Short's identification at the trial was based on her remembrance of what she saw at the crime scene or what she saw at the line-up.

During the pre-trial hearing before the second trial, a brand new factor appeared. Before the line-up took place, Mrs. Short was told to look into a room where Burnett was seated, without shirt or shoes, and to be inconspicuous about it. She then identified Burnett in the line-up and at the first trial. Her testimony at the second trial recalled that at the first trial she had

admitted that her identification was based on her having seen Burnett at the line-up as opposed to the crime scene. Officer Storey stated during the pre-trial hearing that, based on his knowledge and experience in interviewing Mrs. Short, her identification of Burnett came from the line-up and the pictures.

If there is a level of suggestiveness, resulting in an identification, so great as to make irrelevant whatever the witness might say later, it has been reached in this case. This was not an instance of inadvertent suggestion by the police that Burnett might be the one to be identified. It was a blatant effort by the police to see to it that Burnett was picked out of the line-up by Mrs. Short. There is no other explanation for the surreptitiously ordered "preview."

For the proposition that the state "may not use an in-court identification by witnesses whose testimony had been tainted by unconstitutionally conducted and impermissively suggestive procedures," Burnett cites *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1983). That case, an affirmance, does not so hold, but our opinion did make reference to a "constitutionally infirm line-up procedure." The leading case on the subject is *Foster* v. *California*, 394 U.S. 440 (1968), in which the Supreme Court reversed a conviction, holding that the accused's right to due process of law had been violated by an impermissibly suggestive line-up identification procedure.

In the *Foster* case, the witness had been unable to identify Foster in a line-up although Foster stood out by being considerably taller than the others and was wearing a jacket like one known to have been worn by the robber seen by the witness. The police then brought Foster into a room with the witness and sat him down across a table. The witness was still unable to identify him. Ten days later, another line-up was conducted, and Foster was the only participant who had been in the first line-up. The witness identified him positively. The Supreme Court simply reversed the conviction on the due process ground without going into a totality of the circumstances analysis despite a strong discussion of it in Mr. Justice Black's dissenting opinion.

While the police misconduct in this case may not have been in some ways quite as bad as in the *Foster* case, in a sense it was worse because in the *Foster* case it seems to have been at least open and perhaps even unknowing. Here it was obviously hoped

that no one would discover the suggestion made to the witness. It particularly troubles me that the majority opinion suggests that there might have been some "proper" purpose in having the witness look at Burnett sitting alone in a room clothed, or unclothed, as the murderer was reported to have been on the night the crime was committed. What might that proper purpose have been?

On at least two occasions we have cited the *Foster* case for the proposition that, "[i]f there are suggestive elements in the before-trial identification procedure that make it all but inevitable that the victim will identify one person as the criminal, the procedure is so undermined that it violates due process." *Moser* v. *State*, 287 Ark. 105, 696 S.W.2d 744 (1985); *Glover* v. *State*, 276 Ark. 253, 633 S.W.2d 706 (1982). While that statement was an *obiter dictum* in each of those cases, it was the holding of the *Foster* case, and if it has any meaning whatever, it should be the holding here.

In *United States* v. *Wade*, 388 U.S. 218, 229-230 (1967), the Supreme Court observed:

> But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure." The Case of Sacco and Vanzetti 30 (1927). A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that "[t]he

influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined." Wall, Eye-Witness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

Moreover, "[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." [Footnotes omitted.]

Mrs. Short testified she saw Burnett for two or three seconds at the crime scene. Her opportunity for observation was thus insubstantial. Her susceptibility to suggestion, therefore, in the words of the opinion in *Foster* v. *California, supra*, "the greatest." That is demonstrated by the fact that her identification clearly crystalized as the result of her being sent to view Burnett, dressed as the probable culprit was dressed when observed apparently just after the crime had been committed, before she viewed the line-up. Burnett should not have been convicted on the basis of Mrs. Short's identification testimony which was prompted by a highly improper suggestion. There was no other basis for the conviction.

I respectfully dissent.

DUDLEY and PRICE, JJ., join this dissent.