SLIP OPINION

Cite as 2014 Ark. 253

# SUPREME COURT OF ARKANSAS

No. CR–13–563

| | | |
|---|---|---|
| ANTONIO L. WILLIAMS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | | **Opinion Delivered** May 29, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CR–12–653]<br><br>HONORABLE HERBERT WRIGHT, JUDGE<br><br><u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

A jury in Pulaski County found appellant Antonio L. Williams guilty of capital murder for which he received a sentence of life in prison without the possibility of parole. The jury also found that appellant employed a firearm as a means of committing the offense and enhanced his sentence by seven years pursuant to Arkansas Code Annotated section 16-90-120(a) (Supp. 2013). For reversal, appellant contends that the circuit court erred by refusing to suppress the in-court identification of witness Torrece Graydon and by denying his motion for mistrial due to improper remarks made by the prosecutor during closing argument. We affirm on both issues.

*Factual Background*

Because appellant does not challenge the sufficiency of the evidence against him, only a brief recitation of the facts is necessary. On the evening of December 28, 2011, Kelvin Lott Shelton and his girlfriend, Torrece Graydon, left their apartment in North Little Rock and

drove to Little Rock in a Jeep Grand Cherokee that they had borrowed from Graydon's sister. According to Graydon, the purpose of this outing was for Shelton to sell marijuana to someone Shelton referred to as "Big Mike," who was otherwise known as Michael Williams, appellant's brother. After receiving directions, Shelton drove to the area of 15th and Jones Streets and parked near the curb behind a black Chrysler 300. In describing what occurred next, Graydon stated that two men exited the Chrysler and entered the back seat of the Jeep. She testified that Shelton showed the marijuana to the two men, who then wanted to obtain the approval of their "bro" for the purchase. Graydon said that the two men reentered the Chrysler and that, after a few minutes, the two men and another man emerged from the Chrysler. The third man, whom Graydon later identified as appellant, then entered the back seat of the Jeep, while the others remained standing outside. She testified that appellant leaned forward between the front seats in the area of the console, shoved her with his arm, put a gun to Shelton's head and said, "Give me what you got. Give it up." Graydon said that she unfastened her seat belt, got out of the car, and ran. While fleeing, she heard gunshots.

After hiding under a car for a time, Graydon found refuge in a man's home, and she called the police. Officer Debra Atkisson responded to the call, and she and Graydon set out to locate the Jeep. They found the vehicle, which had crashed into a pole at Jones and 14th Streets. Atkisson found Shelton dead inside the Jeep. The autopsy revealed that he had died of a single gunshot wound to the back.

On the night of the murder, other than knowing the moniker "Big Mike," Graydon could not identify any of the assailants, but she described the man with the gun as being 5′ 7″

tall and weighing 160 pounds and said that he was wearing a "do-rag." Graydon telephoned a detective on January 3, 2012, and advised that she remembered that one of the suspects had facial scars from having been burned. Based on additional information received from Shelton's sister, Akeya Shelton, the police developed appellant and his brother Michael as suspects in the murder. Both appellant and Michael bear scars on their faces resulting from a fire that occurred when they were children. Detective Kevin Simpson prepared two photo arrays for Graydon to view. One of the them contained a photograph of appellant, while the other included one of Michael. On January 4, 2012, Graydon identified appellant in the photo array as the man who had held a gun to Shelton's head. She also identified Michael from the photospread as one of the other men, but she later recanted that allegation after seeing Michael at a court appearance and realizing that, because of his large size, he was not one of the men she had encountered that night.

The police acquired a video from a surveillance camera located near the crime scene that depicted the movements of the Jeep and the Chrysler 300, and the persons riding in the Chrysler, shortly before and after the Jeep struck the pole. Also at trial, Sherice Williams, appellant's sister, confirmed in her testimony that appellant drove a black Chrysler 300. During a search, the police found appellant's wallet and a soda can inside the vehicle. Testing revealed that appellant could not be excluded as a contributor of DNA found in the soda can. Crime-scene specialists also collected pieces of plastic from a taillight at the scene. One of the taillights on the Chrysler 300 was broken, and the pieces found in the street were a perfect

forensic match to the Chrysler's taillight. When appellant was arrested, he told the police that he was 5′ 7″ tall and weighed 160 pounds. The State also introduced into evidence two phone calls made by appellant from jail. In one of them, he discussed paying Graydon $1,000 to change her story. In another, appellant stated that Michael was not present when Shelton was killed.

Based on the evidence, the jury found appellant guilty of capital murder. The State had waived the death penalty and, therefore, appellant received a sentence of life in prison without parole, plus the seven-year enhancement for committing the offense with a firearm. This appeal followed.

*Suppression of In-Court Identification*

Prior to trial, appellant moved to suppress Graydon's identification of him from the photospread, as well as her identification of him at trial. He argued that the photo lineup was unduly suggestive because his was the only photograph of a male who had facial scarring and who was wearing a knit cap. He thus contended that Graydon's identification of him from the photo array was inadmissible and that the pretrial identification tainted any subsequent identification of him at trial. After a hearing, the circuit court agreed with appellant's argument that the photo array was impermissibly suggestive and suppressed evidence of that lineup. However, the circuit court denied appellant's request to preclude Graydon's in-court identification of him at trial. Appellant argues on appeal that the circuit court erred because the net effect of the ruling was of no benefit to him because it was necessary for him to use

the suggestiveness of the photospread to attack Graydon's identification of him as the perpetrator at trial.

This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Ray v. State*, 2009 Ark. 521, 357 S.W.3d 872; *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002). Even if prior identifications may have been improper or suggestive, an in-court identification will not be suppressed if indicia of reliability are found to independently exist. *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000); *Burnett v. State*, 302 Ark. 279, 790 S.W.2d 137 (1990). Thus, reliability is the linchpin in determining the admissibility of identification testimony. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003); *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Mezquita, supra*; *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998). The conclusion to be drawn from these factors is dependent on the totality of the circumstances. *Tester, supra*.

It is for the trial court to determine if there are sufficient aspects of reliability present

5

in an identification to permit its use as evidence. *Milholland v. State*, 319 Ark. 604, 893 S.W.2d 327 (1995). It is then for the jury to decide what weight that identification testimony should be given. *Bishop v. State*, 310 Ark. 479, 839 S.W.2d 6 (1992). We do not reverse a ruling on the admissibility of identification unless it is clearly erroneous, and we will not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of misidentification. *Tester, supra* (citing *Chenowith v. State*, 321 Ark. 522, 905 S.W.2d 838 (1995)).

In this case, the circuit court found that the pretrial identification was overly suggestive but nonetheless concluded that the in-court identification should not be suppressed. We are unable to say that the circuit court's ruling is clearly erroneous. Graydon viewed the assailant in the close confines of a vehicle. Graydon testified that the dome light came on when appellant entered the vehicle, and she said that appellant was positioned near her face when he leaned over the console. She accurately described appellant's build at the outset and later recalled seeing distinctive scarring in the area around his mouth. Graydon testified that she was 100 percent certain that appellant was the man with the gun. Although Graydon initially, but mistakenly, identified Michael as one of the assailants, she never wavered in her conviction that appellant was the man with the gun. Finally, Graydon selected the photo of appellant in the lineup one week after the murder. Considering the totality of the circumstances, we perceive no substantial likelihood of misidentification and hold that the circuit court did not err in determining that Graydon's identification was reliable.

SLIP OPINION

*Mistrial Motion*

At trial, the State introduced into evidence recordings of two telephone calls made by appellant while he was in jail. In closing argument, appellant's counsel pointed out that the two calls were among hundreds of calls made by appellant during his incarceration. In his final closing remarks, the prosecutor stated:

> You heard defense counsel talking about the calls. Right? And that we chose to play two calls out of what, 1500, a thousand, whatever? How many calls did Defense play? Not a single one. If this man is an innocent man and 1500 phone calls to mom, don't you think in one of those other calls he would have said I didn't have anything to do with this? I'm not anywhere around there. I don't have anything. I'm an innocent man. I'm being framed. Any kind of number of reasons. Not one single phone call did they play exonerating this man. And if he's been in jail that long and he's calling mom that often, at some point he's gonna say, mom —

At this point, appellant's counsel interposed an objection and moved for a mistrial, arguing that the prosecutor's comments were improper because the rules of evidence did not allow him to introduce appellant's own statements captured in the recordings.[1] The circuit court agreed with appellant's argument but denied the motion for mistrial. At appellant's request, the circuit court admonished the jury by saying,

> Ladies and gentlemen, regarding the prosecutor's argument that Mr. James could introduce something in evidence, that is incorrect, and the jury will

---

[1] Self-serving hearsay statements of innocence by a defendant have long been considered inadmissible. *Brown v. State*, 262 Ark. 298, 556 S.W.2d 418 (1977); *Brockwell v. State*, 260 Ark. 807, 545 S.W.2d 60 (1976). The rule excluding self-serving declarations is a part of the hearsay rule, and its purpose is to prevent the manufacturing of evidence. *Toney v. Raines*, 224 Ark. 692, 275 S.W.2d 771 (1955); *see also* Ark. R. Evid. 801(d)(2)(i) (2013).

ignore that remark.

Appellant argues on appeal that the circuit court erred in denying his motion for mistrial. We have made it clear, however, that a mistrial is a drastic remedy that should only be granted when justice cannot be served by continuing at trial. *Johnson v. State*, 2013 Ark. 494, ___ S.W.3d ___. The circuit court has the sound discretion to decide whether to grant a mistrial, and this decision will not be overturned absent a showing of abuse or upon manifest prejudice to the complaining party. *Jones v. State*, 2012 Ark. 38, 388 S.W.3d 411. Additionally, even where a remark is improper, the circuit court may deny the mistrial motion and cure any prejudice by admonishing the jury to disregard the remark. *Green v. State*, 2013 Ark. 497, ___ S.W.3d ___. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Tucker v. State*, 2011 Ark. 144, 381 S.W.3d 1.

In the instant case, the circuit court sustained appellant's objection and admonished the jury to disregard the prosecutor's incorrect statements. We are convinced that the circuit court's admonition was sufficient to cure any possible prejudice stemming from the prosecutor's remarks. Accordingly, we find no abuse of discretion in the court's refusal to declare a mistrial.[2]

---

[2] To the extent that appellant argues that the prosecutor's comments touched on his right not to testify under the Fifth Amendment, we simply note that this argument was not raised at trial. We will not consider arguments that are raised for the first time on appeal. *Lard v. State*, 2014 Ark. 1, ___ S.W.3d ___.

SLIP OPINION

*Arkansas Supreme Court Rule 4-3(i)*

In the instant case, appellant received a sentence of life in prison without parole. Pursuant to Arkansas Supreme Court Rule 4–3(i) (2013), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.