Cite as 2022 Ark. 158
# SUPREME COURT OF ARKANSAS
No. CR-21-598

| | | |
|---|---|---|
| | | **Opinion Delivered:** September 22, 2022 |
| JUSTIN WILSON | | |
| | APPELLANT | |
| | | APPEAL FROM THE MILLER |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 46CR-19-623] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BRENT HALTOM, |
| | | JUDGE |
| | | |
| | | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant, Justin Wilson, appeals his convictions in the Miller County Circuit Court for two counts of first-degree murder, one count of attempted first-degree murder, one count of aggravated assault, one count of aggravated robbery, committing the attempted murder in the presence of a child and using a firearm in the commission of the other crimes. He was sentenced to consecutive terms of life in prison for each murder.[1] For reversal, Wilson argues

---

[1]Wilson also received thirty years' imprisonment for attempted murder, six years for aggravated assault and twenty years for aggravated robbery. His sentence for attempted murder was increased by ten years because the crime was committed in the presence of a child, and the sentence for each of the other counts was enhanced by fifteen years because he used a firearm in the commission of the crimes.

that (1) surviving victim Lajhonta Collier's testimony identifying him as the perpetrator should have been suppressed, and (2) in the absence of Collier's testimony, the State presented insufficient evidence to support the jury's conclusion that he was the person who committed the crimes. We affirm.

On August 19, 2021, Wilson was charged by amended criminal information with two counts of murder in the first degree, one count of attempted murder in the first degree, one count of aggravated assault, and one count of aggravated robbery. Because a firearm was used, the State sought a sentencing enhancement on both murder counts, the aggravated assault count, and the aggravated-robbery count. The State also sought a sentencing enhancement on the attempted-murder count because the crime was committed in the presence of a child.

The trial was held August 23–24, 2021. According to evidence presented at trial, Cleveland Watson III, a Domino's Pizza employee, called 911 on August 28, 2019, to report three shooting victims in apartment 52 at the Shangri-La apartment complex in Texarkana. That was Lajhonta Collier's apartment. Two of the victims, Scott Weigmann and Reginald Davis, were deceased when officers arrived. Collier had been shot in the neck and was initially feared to be dead. However, when responding officers determined that Collier was alive, he was transported to a hospital. Officers at the scene found a gun, marijuana, and scattered money inside the apartment. They also located a bullet underneath Weigmann's body and another stuck in a nearby wall. Collier's eight-year-old son was found unharmed in

2

a bedroom where he had been watching *The Lion King*. Outside, police found money leading from the apartment and into the courtyard. Investigators eventually recovered $2,493 from the scene.

Detective Shane Kirkland of the Texarkana Police Department investigated the crimes. The night of the shootings, Kirkland interviewed Watson and Larozi Davis III, who was another witness at the apartment complex. Davis resided in an apartment near Collier's and heard gunshots. Like Watson, he also called 911. Both Watson and Davis reported seeing a light-skinned black man with curly hair on the top of his head running from the scene. They each said that the man was wearing a white shirt with dark pants. Davis remembered hearing someone say "Justin" as the man was running. Davis later went to the police station for an interview. He used his own phone to access Collier's Facebook account and located a photograph of Wilson, Collier, and Ethan Johnson.[2] From that photograph, Davis identified Wilson as resembling the man he had seen running. After Kirkland received the statements from Watson and Davis, he made a copy of the photograph that Davis had located and went to the hospital to interview Collier. Kirkland was concerned that Collier would not survive his injury. At the hospital, Collier told Kirkland that Wilson had been the

---

[2]Wilson appears in the photograph holding a pistol in one hand and making an obscene gesture with the other. The hair on top of his head is curly and lengthier than that on the sides.

shooter. After Collier's statement, Kirkland showed Collier the photograph that Davis had selected. Collier identified Wilson in the photograph and said that he was the shooter.

Collier survived the shooting and was the State's key witness. He testified that he lived in Shangri-La, apartment 52, on August 28, 2019, that Wilson had been over to his apartment multiple times prior to the night of the shootings, and that he and Wilson had grown up together. He recalled that the day before the shootings, he took the photograph of him, Johnson, and Wilson. Collier said that he posted that photograph on Facebook, and he identified Wilson in the photograph. Collier then recounted the events leading to the shootings. According to Collier, Wilson had arranged to come by the apartment to purchase marijuana. Collier said that he and the other victims were in the apartment when Wilson knocked on the door, and Collier's son let him in. Collier testified that he put his son in the bedroom and returned to the living area and began to argue with Davis about allowing the child to open the door. Collier said that he then turned to go back to the bedroom. Collier recalled that as he turned, Wilson pulled out a gun and shot him in the neck. He said that he fell to the floor but was still conscious and saw Weigmann and Davis fall after they were shot. Collier testified that he heard Wilson going through his cabinets where he kept his money and that he believed that Wilson took money and marijuana from him. Collier conceded that he first told responding officers at the apartment that "Ethan" was the shooter. Collier explained that at the time, he was "in and out," and "laying on the floor . . .

4

paralyzed." He testified that he was also "bleeding out" and that he was mistaken when he initially identified Ethan.

The State also presented testimony from Dylan Ray. Ray was housed with Wilson at the Miller County jail. Ray testified that Wilson had discussed the shooting at the Shangri-La Apartments and that Wilson told him he had shot three people and discarded the gun at a park. Ray also said that Wilson told him that his biggest regret was that one shooting victim had survived. Other evidence at the trial included testimony from officers that they found marijuana, a gun, and $639 at Wilson's mother's residence, where they had taken Wilson into custody the day after the shootings. The marijuana was packaged in the same type of FoodSaver bags as the marijuana found in Collier's apartment.

Dr. Jennifer Forsyth, a forensic pathologist who conducted the autopsies of Weigmann and Davis, testified that Weigmann died of gunshot wounds to the head and torso. She concluded that Davis died of a gunshot wound to the head. Although projectiles were recovered from the apartment and the bodies of the deceased, the State's ballistics expert testified that they were not fired from any of the firearms that were tested.[3] The gun used in the shootings was never located.

Wilson testified in his own defense. He admitted that he had been dressed in a white shirt and black pants on August 28, 2019, and that he had been to Collier's apartment twice

---

[3]In addition to the firearms recovered from Collier's apartment and Wilson's mother's residence, two other firearms were tested as part of the investigation.

that day. According to Wilson, the second time he went to the apartment, he intended to purchase marijuana. He said that he obtained some marijuana and went to the bathroom. Wilson testified that as he was in the hallway returning to the living area, he saw Weigmann being forced into the front door and two men coming in behind him. Wilson said that he saw that one of the men had a gun and that he therefore retreated as shooting began. He said that he came out after the shooting ended, checked Collier's pulse, and fled the scene. Wilson agreed that he was probably the running man that Davis described seeing the night of the shootings. Wilson said that after he left the apartment, he went with some friends to buy groceries and cook hamburgers. He admitted that he did not call police at any point that night.

The circuit court denied Wilson's motions for a directed verdict. Following closing arguments, the case was submitted to the jury, which found Wilson guilty on all counts. Wilson filed a timely appeal.

Although it is presented as his second point on appeal, we first address Wilson's challenge to the sufficiency of the evidence due to double-jeopardy considerations. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Wilson contends that without Collier's testimony, the State presented insufficient evidence to support the jury's conclusion that he was the one who had committed the crimes.

In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *McCray v. State*, 2020

6

Ark. 172, 598 S.W.3d 509. This consideration encompasses all the evidence presented at trial, including that which may have been inadmissible. *Watson v. State*, 2014 Ark. 203, 444 S.W.3d 835. We will affirm a judgment of conviction if substantial evidence exists to support it. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Direct evidence is evidence that proves a fact without resort to inference when, for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Chatmon v. State*, 2015 Ark. 28, 467 S.W.3d 731. Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Armstrong*, 2020 Ark. 309, 607 S.W.3d 491. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Howard v. State*, 2016 Ark. 434, 506 S.W.3d 843.

Wilson was convicted of two counts of murder in the first degree and one count of attempted murder in the first degree as set forth in Arkansas Code Annotated sections 5-10-102(a)(2) (Supp. 2017) and 5-3-201 (Repl. 2013). He was also convicted of aggravated assault

7

and aggravated robbery. *See* Ark. Code Ann. §§ 5-13-204 (Supp. 2019) & 5-12-103 (Repl. 2013). His sentence for attempted murder was enhanced pursuant to Arkansas Code Annotated section 5-4-702 (Supp. 2019) because it was committed in the presence of a child, and his other sentences were enhanced pursuant to Arkansas Code Annotated section 16-90-120 (Supp. 2019) because he used a firearm.

On appeal, Wilson does not argue that any specific element of the charged crimes was unsupported by substantial evidence. Instead, he asserts only that the State's evidence identifying him as the perpetrator was insufficient without Collier's testimony.[4] However, in considering sufficiency, we must consider Collier's challenged testimony, even if it was improperly admitted. *Watson*, 2014 Ark. 203, 444 S.W.3d 835. Contrary to Wilson's contention, the State presented substantial evidence to support the jury's conclusion that he was the person who committed the crimes. First, Collier was in the apartment when he and the other victims were shot. He testified that he knew Wilson, and he identified Wilson as the shooter. According to Collier, Wilson was the only person other than the victims who was in the apartment at the time of the shootings. Second, Ray testified that Wilson told him that he had shot three people at the Shangri-La Apartments. Finally, Wilson himself

---

[4]Wilson's directed-verdict motion also challenged the sufficiency of evidence for certain elements of the aggravated-robbery and aggravated-assault charges. However, on appeal he only challenges the State's proof of identity. Arguments made to the trial court but not included in arguments on appeal are considered abandoned. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996).

admitted being at the apartment when the shootings occurred and running away thereafter. While Wilson claimed that two other men were responsible, other witnesses saw only one person running from the scene. Although Wilson's testimony directly contradicted Collier's, and Collier initially told law enforcement officers that Ethan was the shooter, a jury may believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Howard*, 2016 Ark. 434, 506 S.W.3d 843. Moreover, Wilson's improbable explanation and flight from the scene of a crime are indicative of guilt. *Id.* (holding that efforts to conceal a crime and evade detection, along with false, improbable, or contradictory statements to explain suspicious circumstances may be considered by the jury as evidence of guilt). The evidence presented allowed the jury to reach its conclusion without resorting to speculation or conjecture.[5] Accordingly, we hold that substantial evidence supports the jury's verdict.

We turn next to Wilson's contention that Collier's testimony should have been suppressed. Wilson asserts that authorities used an impermissibly suggestive procedure when they showed him a single photograph that depicted Wilson. Before the trial, Wilson moved to suppress the identification evidence expected to be offered by Collier. The circuit court considered the motion at an August 20, 2021 hearing. Kirkland testified at the hearing. He

---

[5]In his brief, Wilson argues that "in the absence of Collier's testimony . . . there was insufficient evidence to support appellant's conviction." Thus, Wilson appears to concede that with Collier's testimony, substantial evidence supports the jury's verdict.

said that he asked Collier at the hospital if he knew the identity of the shooter and Collier said, "[I]t was Justin." According to Kirkland, it was only after Collier made that statement that he produced the photograph and that Collier identified Wilson as the shooter. Kirkland also said that Collier never mentioned Ethan, and he testified that Collier at that time seemed "lucid . . . and clear of mind." The circuit court concluded that Collier's pretrial identification was not constitutionally improper and that he would be allowed to testify to the pretrial identification and to offer identification testimony at the trial. Accordingly, the circuit court denied Wilson's motion to suppress Collier's identification evidence.

We will not reverse a circuit court's ruling on the admissibility of an in-court identification unless that ruling is clearly erroneous under the totality of the circumstances. *Dorsey v. State*, 2020 Ark. 316, 607 S.W.3d 485. In making that determination, we look first at whether the pretrial identification procedure was unnecessarily suggestive or otherwise constitutionally suspect. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). It is an appellant's burden to show that a pretrial identification was suspect. *Ray v. State*, 2009 Ark. 521, 357 S.W.3d 872.

This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483. However, even if prior identifications may have been improper or suggestive, an in-court identification will not be suppressed if indicia of reliability are found to

10

independently exist. *Id.* Thus, reliability is the linchpin in determining the admissibility of identification testimony. *Mezquita*, 354 Ark. 433, 125 S.W.3d 161.

In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Mezquita*, 354 Ark. 433, 125 S.W.3d 161. The conclusion to be drawn from these factors is dependent on the totality of the circumstances. *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000). It is for the trial court to determine if there are sufficient aspects of reliability present in an identification to permit its use as evidence. *Milholland v. State*, 319 Ark. 604, 893 S.W.2d 327 (1995). It is then for the jury to decide what weight that identification testimony should be given. *Williams*, 2014 Ark. 253, 435 S.W.3d 483. We will not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of misidentification. *Id.* Notably, the factors regarding the reliability of an in-court identification need not be addressed if it is determined that the pretrial identification procedure is not unduly suggestive. *Thompson v. State*, 2019 Ark. 312, 586 S.W.3d 615 (citing *King v. State*, 323 Ark. 558, 916 S.W.2d 725 (1996)).

In this instance, the circuit court did not clearly err in determining that Collier's pretrial identification was not constitutionally improper. The evidence in the record indicates that Collier actually identified Wilson by name before he was shown the photograph. Kirkland's showing Collier the photograph could not have made it "all but inevitable" that Collier would identify Wilson because Collier had already identified Wilson as the shooter. Because we hold that the procedure was not unduly suggestive, we need not explore the issue of whether the identification was reliable under the totality of the circumstances. *Ray*, 2009 Ark. 521, 357 S.W.3d 872.

Because Wilson received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to him in compliance with Arkansas Supreme Court Rule 4-3(a) (2021), and no prejudicial error has been found.

Affirmed.

*James Law Firm*, by: *J. Daniel Hall* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.