Cite as 2026 Ark. App. 298

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–23–271

|  |  |
|---|---|
| | **Opinion Delivered** May 13, 2026 |
| DONALD RAY MOUSE, JR.<br>APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-20-2182] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BRAD KARREN, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

A jury found Donald Ray Mouse guilty of robbery and third-degree battery, and he has appealed his convictions.[1] He contends that the circuit court erred in denying his motions for directed verdict because there was reasonable doubt as to the identification of him as the perpetrator of these crimes. We affirm.

In October 2020, the State charged Mouse with one count of robbery and one count of third-degree battery. The State alleged that he committed these crimes by hitting, kicking, and throwing rocks at Thomas Davis and by taking Davis's bicycle and other belongings. The State later amended the criminal information to charge Mouse as a habitual offender.

---

[1]This is Mouse's second appeal; his first appeal was filed as a no-merit appeal, which we remanded to settle and supplement the record and ordered rebriefing. *Mouse v. State*, 2025 Ark. App. 12.

The circuit court held a jury trial in September 2022. Pertinent to this appeal, Davis testified that on the night of 14 September 2020, he was outside the Siloam Springs Public Library and was attacked by a tall man with blonde hair. The man threw rocks and a plastic bottle at Davis, then he got on Davis's bicycle and left. The man quickly returned, however, and demanded Davis's backpack. Davis set down his backpack so he could defend himself and noticed a second man standing behind him; the second man had dark hair and was about the same height as the blonde man. The blonde man then punched Davis in the nose, breaking his glasses, and continued to hit and kick him multiple times. Afterward, the blonde man picked up the backpack, and he and the second man walked away. The next day, Davis identified Mouse as the perpetrator in a photo lineup, and Davis also identified Mouse at trial.

On cross-examination, Davis confirmed that the second male had dark hair and that the police did not show him a photo lineup of white males with dark hair because "he really didn't do anything" and because he (Davis) didn't get a good look at him. Defense counsel asked, "Now, these males, they were wearing dark clothes that night; is that right?" Davis responded, "No, I don't think they was wearing dark clothes. . . . It's been two years, but I want to say it was greenish maybe. . . . A green jacket or something. Not a jacket, it was a hoodie." Davis also said that he has "pretty bad eyesight" without his glasses but that he saw the blonde-haired man take his backpack. "[W]hen he quit kicking on me, I looked up and watched what he was doing and he walked right over and grabbed my backpack because the other guy was kind of over at the corner of the library. . . . It wasn't the dark-haired guy that grabbed my backpack." Davis denied that he could not see at all without

his glasses and said by way of analogy, "I can't read that sign back there but I can tell you it's got red on it."

Detective Ron Coble interviewed Mouse after his arrest on September 17, three days after the incident, and Mouse told Coble that he had been staying with his sister, Lavonna French, and her boyfriend, Travis Harris. French's apartment is very close to the library. Mouse said that he did not remember getting into a fight with a man at the library. But when Coble said, "[Y]ou were fighting that night with [Davis]," Mouse responded, "Yeah, I know." Mouse said that he could have been drinking. Coble showed him a photo from the library's video surveillance footage, but Mouse denied that it was him and again denied assaulting Davis.[2] On cross-examination, Coble acknowledged that Harris may have been at the library at some point the night of the assault but that Mouse did not implicate Harris in the robbery. Coble also agreed that in the surveillance footage, Mouse is wearing a ball cap and a hoodie. Coble also identified Mouse's booking photo and described him as a "white male, dark hair, approximately a little over six foot [sic] tall, slim build."

At the close of the State's case, the defense requested a directed verdict on both charges. The defense argued that the State had failed to prove that Mouse was the individual who committed the battery

> because they're proving Donald Mouse with the color of his hair, essentially, and all we saw was a man in a black hat. That was the video. That was Officer Coble. . . . And they did not prove that that was Donald Mouse because . . . [Mouse] was described [as] this blond-headed male wearing a green hoodie. . . . And the person that committed the battery was a man in a black hat with a dark hoodie. . . . So, one, Donald Mouse was not the person

---

[2]The jury was shown the library's video surveillance footage, which is in black and white and has no sound.

3

who did this. Secondly, there was the testimony that Travis Harris was on the scene. There was testimony that Travis Harris had black hair. So it was either black hat or black-haired individual that was committing this battery. So we'd argue that that was the individual that was throwing these rocks and/or bottles or kicking or what have you Mr. Davis. So we would argue that Donald Mouse did not commit any sort of physical interaction with Mr. Davis.

As to the robbery, the defense asserted that because the bicycle had been recovered on library property, it had not been stolen, and that the State had not proved that it was Mouse who left with the bicycle or the backpack "because the person in the video with the bicycle is wearing a black hat and a black jacket or hoodie." The court denied the motions for directed verdict. The defense rested and renewed its motions, which were again denied.

The jury found Mouse guilty on both charges, and he was sentenced to an aggregate term of forty years' imprisonment. The court also ordered that Mouse's sentence run consecutively to his sentence of almost forty years' imprisonment in case number 04CR–20-2531.[3] Mouse has timely appealed his convictions.

The test for determining sufficiency of the evidence is whether there is substantial evidence, direct or circumstantial, to support the verdict. *Johnson v. State*, 337 Ark. 196, 987 S.W.2d 694 (1999). On appeal, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *LeFever v. State*, 91 Ark. App. 86, 208 S.W.3d 812 (2005). Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). We do not weigh the evidence presented at

---

[3]In that case, Mouse was found guilty of aggravated robbery, felon in possession of a firearm, two counts of aggravated assault, and theft of property.

trial, as that is a matter for the jury. *Swanigan v. State*, 2019 Ark. App. 296, 77 S.W.3d 737. Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491.

Mouse argues that Davis "did not make a proper identification sufficient to sustain [Mouse's] conviction for either crime beyond a reasonable doubt." For purposes of analysis, Mouse uses the factors adopted by the courts for determining the reliability of an in-court identification in cases where prior identifications may have been improper or suggestive: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483.[4]

Using these factors, Mouse contends there is reasonable doubt regarding Davis's identification of him as the perpetrator of these crimes. He asserts that the person who committed these acts was wearing a hat, so the person's hair color could not have been known to either Davis or law enforcement. He also argues that the perpetrator "was described as a 'blondheaded male wearing a green hoodie,' but the person that committed

---

[4]Mouse does not argue that there was any improper or unduly suggestive pretrial identification.

5

the battery was a man in a black hat with a dark hoodie." Mouse also notes that Davis "testified that he was not wearing his glasses, and he cannot see without his glasses" and that it was dark when this incident occurred.

Finally, Mouse argues that there was an identification of a second actor, Travis Harris, but he was not investigated. Mouse asserts that law enforcement knew Harris was at the library that night and that Harris had "either a black hat or black hair, which was visible in the surveillance video," which is "direct and circumstantial evidence in the description of the bad actor being more in line with what Travis Harris was wearing." Nevertheless, law enforcement did not investigate Harris, presented a photo lineup consisting of only blonde males to Davis, and interviewed only Mouse. He concludes that it was Harris who committed these crimes and that his convictions should be reversed and dismissed.

The State responds that while Davis claims there was insufficient proof that he committed the alleged crimes, he does not dispute that Davis identified him as the culprit in a six-person photographic lineup following the robbery. The State argues that that identification alone is sufficient proof that he was the perpetrator. As for Davis's in-court identification of Mouse, the State contends that it was for the jury to determine the credibility of Davis's testimony. And once the jury deemed that identification credible, it also constitutes substantial evidence to support Mouse's convictions. *See Davis v. State*, 2016 Ark. App. 274, 493 S.W.3d 339 (victim's unequivocal testimony identifying appellant as the culprit was sufficient to sustain convictions).

In *Bowman v. State*, 83 Ark. App. 223, 125 S.W.3d 833 (2003), the appellant challenged the sufficiency of the evidence by arguing that the victim's in-court identification

6

of him was unreliable. We stated, "Absent an allegation of constitutional infirmity in the eyewitness identification process, the reliability of [the victim's] identification of appellant was a question for the factfinder." *Id.* at 225, 125 S.W.3d at 834 (citing *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001)).

The *Bowman* court also cited *Stipes v. State*, 315 Ark. 719, 870 S.W.2d 388 (1994), in which Stipes questioned the reliability of the victim's identification of him as the perpetrator. In considering his argument, the supreme court explained, "[W]hen a witness makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the factfinder to determine," and the "unequivocal testimony identifying the appellant as the culprit is sufficient to sustain a conviction." *Id.* at 721, 870 S.W.2d at 389.

It is axiomatic that the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra.* Here, Davis unequivocally identified Mouse as the perpetrator, and absent a constitutional challenge, any challenge to the reliability of his identification of the suspect was a question for the jury. We therefore affirm Mouse's convictions.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

7