2013 Ark. 196

**Duane W. SPEARMAN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–803.**

Supreme Court of Arkansas.

May 9, 2013.

Depper Law Firm, Inc., El Dorado, by Robert L. Depper, Jr., for appellant.

Dustin McDaniel, Att'y Gen., by Jake H. Jones, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Justice.

A jury found Duane W. Spearman guilty of two counts of aggravated robbery and one count of theft of properly. As a habitual offender, he was sentenced to life imprisonment on each aggravated-robbery conviction and twenty years' imprisonment on the theft conviction. Because he was sentenced to life imprisonment, his appeal was filed with this court. Ark. Sup.Ct. R. 1–2(a)(2) (2012). On appeal, Spearman argues that because the evidence was insufficient to establish that he was the person who committed the crimes, the circuit court erred in denying his motion for a directed verdict. Further, he argues that the State failed to comply with the Interstate Agreement on Detainers Act (IADA) and failed to follow proper extradition procedures, and thus the court erred by denying his motion to dismiss the criminal information charging him with these crimes. We affirm.

■ Because of double-jeopardy concerns, we first address Spearman's challenge to the sufficiency of the evidence before addressing other points on appeal. See, e.g., Lacy v. State, 2010 Ark. 388, at 5, 377 S.W.3d 227, 232. On September 16, 2010, Terry Johnson was working at Dollar General around closing time. Yolesha Jones, Johnson's co-worker, was counting money in the store's back office. When Jones left the office, she was confronted in the store by a man who held a silver-colored gun on her. She described the perpetrator as wearing a bandana, a red hat that had a white "W" on it, and glasses. She gave the man the cash she had counted, an amount over $3100. Johnson, after checking out the last customer, locked the front door and went to the back of the store and was confronted by the man, whom she described as wearing either a black-and-white or a blue-and-white bandana over his face, a red baseball cap with a white "W" on it, and glasses. He pointed a silver-barreled pistol at her and beckoned for her to come to him. He asked Johnson to remove money from her cash-register drawer in the front of the store. Johnson explained that she could not perform the transaction, so he asked Jones to do so. Jones removed the money from the drawer and gave it to him. The man then left the store.

Jones further testified that Officer Bob Graham of the Lake Village Police Department showed her two photographic lineups. In the first lineup, she covered the lower half of each face because the perpetrator's face had been partially covered. She identified Spearman as the perpetrator, but she told Graham that the perpetrator had worn glasses and she wanted to see a photographic lineup where the persons in the lineup were wearing glasses. In a second photographic lineup where the persons in the lineup were wearing glasses, she identified Spearman as the perpetrator. In court, Jones identified Spearman as the perpetrator. A video and still photographs of the incident taken by the store's security cameras were also shown to the jury.

Graham's testimony about the lineup dovetailed with Jones's testimony. He testified that he presented Jones with two photographic lineups. In a lineup he showed her on September 23, 2010, she thought Spearman was the perpetrator, but she was not 100% positive and wanted to see a second lineup in which the persons in the lineup wore glasses. In the second lineup, which he showed her on September 28, 2010, she identified Spearman as the perpetrator.

Lakeisha Bynum testified that she was outside the store around the time it closed. She described to police a vehicle she had seen at the store. In court, she viewed a photograph of a vehicle and testified that it

looked like the vehicle she had seen that night. Christopher Tharp, a Greenville, Mississippi, police officer who assisted in the investigation of the robbery, found Spearman in the vehicle identified by Bynum. Tharp conducted a search of Spearman's residence in Greenville, Mississippi. A red hat with a "W" on it, a pistol with a black handle and a silver barrel, and a blue or black bandana were found in the residence.

In his directed-verdict motions at trial, Spearman argued that the evidence adduced by the State was not sufficient to establish his identity as the perpetrator of the crimes. Particularly, he notes the absence of DNA evidence, fiber evidence, or fingerprint evidence tying him to the crimes. He also discounts Jones's testimony identifying him as the perpetrator, as when Jones saw him, the perpetrator had on a hat as well as a bandana that covered his entire face except his eyes, eyebrows, and glasses. .

■ Spearman, however, misapprehends the nature of our review. On appeal from the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence that supports the verdict, and determine whether the verdict is supported by substantial evidence, which is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *See, e.g., Lockhart v. State,* 2010 Ark. 278, at 4, 367 S.W.3d 530, 533. Here, Jones identified Spearman as the perpetrator both in court and in the pretrial photographic lineups. Both Jones and Johnson described the perpetrator as wearing a bandana, a red hat with a white "W" on it, and glasses. Both testified that he held a silver pistol on them. In a search of Spearman's residence, Tharp

found a blue or black bandana, a red hat with a "W" on it, and a pistol with a black handle and a silver barrel. Tharp also found Spearman in a vehicle matching the one seen by Bynum. Also, the jury was shown a video and still photographs of the incident. Given this evidence, we hold that substantial evidence supported the verdicts, as the evidence supported the conclusion that Spearman was the perpetrator of the crimes.

■ In his second issue on appeal, Spearman argues that the circuit court erred in denying his motion to dismiss the charges based on the State's failure to comply with the IADA and its failure to follow proper extradition procedures. In arguing that the State violated the IADA, Spearman cites to Arkansas Code Annotated section 16–95–101 art. IV(e) (Repl. 2006), which provides that "[i]f trial is not had on any indictment, information, or complaint . . . prior to the prisoner's being returned to the original place of imprisonment," then "such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Spearman contends that "after being brought to the State of Arkansas under an order" of the circuit court, he "was returned to the State of Mississippi where [he] was picked up from a Mississippi prison," and thus he was entitled to dismissal of the criminal information.

In support of his assertion, Spearman observes that in a document dated January 6, 2011, and styled as an "Order for Inmate Delivery," the Chicot County Circuit Court stated that Spearman was in the custody of the Washington County jail in Greenville, Mississippi, and that his presence was necessary for a first appearance in circuit court on February 22, 2011. The court ordered the jail to release Spearman to the sheriff in anticipation of Spearman's

appearance in court, with the sheriff to return him to the jail when Spearman's presence was no longer needed. Spearman also notes that an attorney entered her appearance as his attorney of record, as evidenced by a document filed of record on February 16, 2011, and styled as an "Entry of Appearance." Spearman further notes that a year later, on February 6, 2012, the Chicot County Circuit Court completed a document entitled "Record of First Judicial Appearance," which stated that Spearman appeared in court on that date. Spearman alleges that he "was then returned to the State of Mississippi."

We hold that the record does not support Spearman's assertion that he appeared in Chicot County Circuit Court and then returned to Mississippi before his May 2012 trial in Arkansas. The record does not demonstrate that he was sent to Arkansas pursuant to the 2011 "Order for Inmate Delivery." Rather, during a hearing on February 22, 2011, involving Spearman's counsel of record, the State, and the circuit court, it was noted that Spearman was not present and had refused extradition. The record further demonstrates that in December 2011, a rendition warrant was issued by the governor of Mississippi. The "Record of First Judicial Appearance" showed that Spearman appeared in court on February 6, 2012. Nothing in the record indicates that Spearman was then returned to Mississippi before his trial. The burden of providing a record sufficient to demonstrate error is on the appellant. *See, e.g.,* *Wallace v. State,* 2009 Ark. 90, at 15, 302 S.W.3d 580, 589. Because Spearman has failed to provide a record demonstrating the error he alleges, we are precluded from addressing the merits of his argument.

Spearman also asserts under this point that when he "was brought back to Arkansas ... he was brought from imprisonment in Mississippi." He contends that "[t]here was no extradition process," that he did not waive extradition, and there was no extradition order from the governor of Mississippi authorizing Spearman's "return ... from the State of Mississippi to Arkansas." To the extent that he is arguing either that he was improperly sent to Arkansas before the extradition process or that he was sent to Arkansas after the extradition process and then returned to Mississippi only to be sent again to Arkansas, he has failed to provide a record demonstrating any of this, and thus we are unable to address his argument. *Id.,* 302 S.W.3d at 589.

Finally, we note that Spearman received a sentence of life in prison on each aggravated-robbery conviction. Consequently, in accordance with Arkansas Supreme Court Rule 4–3(i) (2012), the record in this case was examined for objections, motions, and requests made by either party that were decided adversely to Spearman. No prejudicial error was found.

Affirmed.

CORBIN, DANIELSON, and GOODSON, JJ., concur.

COURTNEY HUDSON GOODSON, Justice, concurring.

I agree that there is substantial evidence to support Spearman's convictions. I also concur in the decision to affirm the denial of Spearman's motion to dismiss, but I do so for a different, more fundamental reason.

Spearman's motion to dismiss is grounded on an alleged violation of the Interstate Agreement on Detainers Act, codified at Arkansas Code Annotated section 16–95–101 (Repl.2006). However, the Act does not apply in this case because the State of Mississippi is not a party to the interstate

agreement. In *Smith v. State*, 258 Ark. 533, 528 S.W.2d 359 (1975), this court held that the appellant's request for a speedy trial made under the Act was unavailing because the state from which he was extradited, Mississippi, was not a party to the interstate agreement. In *Young v. State*, 254 Ark. 72, 491 S.W.2d 789 (1973), we also held that the Act's requirement for conducting trial within 180 days of extradition did not apply because Georgia, the sending state, was not a party to the agreement at the time of extradition.

Based on our caselaw, the circuit court in this instance denied the motion to dismiss on the ground that the provisions of the Act were not applicable because Mississippi has not adopted the interstate agreement. I would affirm the court's decision for this reason alone. Nonetheless, the majority chooses to affirm on the basis that no violation of the Act occurred because the record does not support Spearman's assertion that he was returned to Mississippi before being tried in Arkansas. However, it is not necessary to decide whether the record supports Spearman's claim that the Act was violated when the Act simply does not apply. Moreover, this course is unwise because, by ignoring our precedent, the majority opinion leaves the false impression that the Act might have been violated if the facts had supported Spearman's argument. Because the Act does not apply, there is no set of facts under which Spearman's argument could succeed. For these reasons, I concur in the decision to affirm.

CORBIN and DANIELSON, JJ., join.