SLIP OPINION

Cite as 2014 Ark. 415

# SUPREME COURT OF ARKANSAS

No. CR-14-59

| | | |
|---|---|---|
| BRYANT E. TURNER | | **Opinion Delivered** October 9, 2014 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-12-921] |
| V. | | |
| | | HONORABLE CHARLES E. CLAWSON, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

A Faulkner County jury found appellant, Bryant E. Turner, guilty of aggravated robbery and theft of property. Because the total sentence imposed was life imprisonment, his appeal was filed with this court. Ark. Sup. Ct. R. 1-2(a)(2) (2014). On appeal, Turner challenges the sufficiency of the evidence to support the convictions. We affirm.

On August 27, 2012, Austin Casher and Taylor Mitchell were working at Game Point, a video-game retail store in Conway, Arkansas. While Casher and Mitchell were preparing to close the store, a man came to the counter, reached into a Nike backpack that he was carrying, and raised a gun. According to Casher, the man stated, "I need all the money. No one is going to get hurt if you cooperate. I need all the money." He ordered Casher and Mitchell to the floor and removed the cash from all the registers and a lockbox, approximately $1200. According to Casher, just before the man left, he said, "I want you guys to remember me because I spared your lives." After the police arrived, Casher discovered the backpack on

the floor. The backpack contained a bottle of mouthwash.

On the same day as the crime, Casher and Mitchell separately viewed a black-and-white photographic spread that did not contain Turner's photograph. Casher picked one person—who was incarcerated in Texas—with a certainty of 75% to 80%. Two days later, Casher viewed a color spread. Casher picked Turner as the person who had committed the crimes and told police that he was 100% positive. In court, Casher identified Turner as the person who had committed the crimes. Casher also viewed a videotape taken from the store's security cameras, and he identified Turner and Turner's backpack. He also identified the backpack introduced into evidence as the one Turner had left at the store. On cross-examination, Casher testified that because the second spread was in color, it was easier to determine facial features and skin tone, and he was not in as much shock when he viewed it.

Mitchell testified that he also viewed the black-and-white spread and chose a person—the same person chosen by Casher—with a certainty of 60% or 70%. He further testified that when he viewed the color spread, he chose Turner and indicated to police that he was 60% certain. He testified that the color photographs made it easer to make an identification. Mitchell, in court, identified Turner as the person who had committed the crimes. He also identified the backpack introduced into evidence as the one that Turner had left at the store.

In addition to testimony from Casher and Mitchell, the State introduced testimony from a forensic-DNA examiner who testified that Turner's DNA was found on the inner cap of the bottle of mouthwash. The DNA examiner also testified that DNA from more than two

persons was present on a cutting from the Nike backpack. A latent-print examiner testified that he was unable to attribute to Turner any of the fingerprints lifted by the police.

In his directed-verdict motions, Turner challenged the sufficiency of the evidence to support the aggravated-robbery and theft-of-property charges. Turner asserted that the identification evidence was, at best, "shaky," and that there was no proof that he was involved in the crimes. Turner further contended that there was no proof relating to how the mouthwash bottle arrived at the store and that the backpack, which had on it DNA of more than two persons, could have been placed there by someone else. He further argued that there was no evidence that a deadly weapon had been used. The circuit court denied the motions. After he was convicted, he appealed, challenging the sufficiency of the evidence to support the verdicts.

On appeal from the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence that supports the verdict, and determine whether the verdict is supported by substantial evidence, which is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *See, e.g.*, *Spearman v. State*, 2013 Ark. 196, 427 S.W.3d 593. A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person and is armed with a deadly weapon or represents by word or conduct that he is armed with a deadly weapon. Ark. Code Ann. §§ 5-12-102 to -103(a)(1), (2) (Repl. 2013). A firearm is a "deadly weapon." Ark.

Code Ann. § 5-1-102(4)(A) (Repl. 2013). Further, a "firearm" includes any device made to expel a projectile by the action of an explosive. Ark. Code Ann. § 5-1-102(6)(A). A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013).

In his challenge to the sufficiency of the evidence, Turner argues that there was no physical evidence connecting him to the crime, noting that the State was unable to match to him either the fingerprints or the DNA found on the backpack. Turner further observes that Casher and Mitchell identified another individual in the first spread as the man who had robbed the store. Turner notes that the second spread was shown to Casher and Mitchell two days later, and Mitchell was only 60% certain of his identification. While he acknowledges that his DNA was found on the bottle of mouthwash, he asserts that there was no evidence regarding how the mouthwash arrived at the store. Finally, Turner argues that because the State did not introduce any weapons into evidence or present testimony about the gun seen in the video, there was no proof that he was armed with a deadly weapon.

In focusing on evidence that, arguably, might support his claim that he was not the person who committed the crimes, Turner misapprehends our standard of review. As stated above, we view the evidence in the light most favorable to the verdict. Despite an initial identification of another person in the first spread by both Casher and Mitchell, both identified Turner in the second spread, with Casher being 100% certain. The jury was also shown a video and still photographs of the incident. Further, the jury had before it both

4

Casher's and Mitchell's in-court identifications of Turner as the perpetrator of the crimes. Absent a constitutional challenge to the identification, it is for the jury to determine whether the eyewitness identification is reliable. *See, e.g.*, *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). Also, the jury had before it witness testimony, videotape, and still photographs from which it could conclude that Turner brought the backpack into the store and left it there and that Turner's DNA was present on a mouthwash bottle found in the backpack. Finally, while Turner argues that there was no proof that he used a deadly weapon, as noted above, a "deadly weapon," by definition, includes a firearm. The jury had before it not only testimony from Casher and Mitchell that Turner used a gun, but also videotape and still photographs in which Turner was in possession of a gun. Given this evidence, we hold that substantial evidence supported the verdicts.

Finally, because Turner received a sentence of life imprisonment, in accordance with Arkansas Supreme Court Rule 4-3(i) (2014), the record was examined for objections, motions, and requests made by either party that were decided adversely to Turner. No prejudicial error was found.

Affirmed.

*The Henry Firm, P.A.*, by: *Brianne A. Franks*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.