SLIP OPINION

Cite as 2016 Ark. 7

# SUPREME COURT OF ARKANSAS

No. CR–15–481

| | |
|---|---|
| SAMUEL L. CONWAY | **Opinion Delivered** January 14, 2016 |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CR–2010-420-I] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| APPELLEE | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

A Garland County jury convicted Samuel L. Conway of capital murder and aggravated robbery stemming from the March 14, 2005 shooting death and robbery of Mary Adams. The State waived the death penalty, and Conway was sentenced to life without parole plus 588 months to be served in the Arkansas Department of Correction. He raises five points on appeal, arguing that the circuit court erred (1) by failing to grant his motion for a directed verdict; (2) by granting the State's motion in limine; (3) by denying his motion to suppress his statement and thereafter allowing the statement to be read into the record and introduced into the record and introduced at trial; (4) by failing to grant a mistrial due to the State's improper remarks during closing; and (5) by giving a nonmodel and confusing jury instruction. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2015). We affirm.

A substantial part of the State's case involved a statement, purporting to bear Conway's signature, that was generated by the Hot Springs police after interviewing

SLIP OPINION

Conway in 2005. Prior to his November 19, 2014 trial, Conway moved to suppress the statement. At a pretrial hearing, retired detective Jerry Cotten testified that, while serving as lead investigator on the case, he interviewed Conway at 1:39 p.m. on December 13, 2005, at the Garland County Sheriff's Department Criminal Investigation Division offices. At the time, Conway was incarcerated on unrelated charges. Cotten claimed that Conway was Mirandized, but the rights declaration form for the case could not be located. Nonetheless, Cotten stated that giving Miranda warnings was standard procedure.

According to Cotten, it was the policy of the Hot Springs Police Department in 2005 to not record interviews. Instead, Cotten produced a typed document that memorialized the statement. The detective stated that he composed the document from notes he had taken of Conway's interview and that it was his "policy" to destroy the notes after a typed statement was produced. Sergeant Tim Smith, who assisted Cotten with Conway's interview, corroborated Cotten's testimony.

Testifying at the suppression hearing, Conway admitted that he had submitted to an interview with Hot Springs police. He stated that he was nineteen years old at the time and claimed to have "pretty good" reading skills. He further testified that after he was told that Dominic Hobson, a suspected accomplice, had made a full statement, he did tell police "bits and pieces of what happened," but he did not remember being read his Miranda rights. Likewise, Conway stated that he did not recall signing the statement. Nonetheless, Conway acknowledged that the written statement recites that he made his statement after having been "read his Miranda rights and he said he understood them," and that "he signed and initialed

2

the rights form including the waiver and consent section of the form." Further, Conway admitted that it appeared to be his signature at the bottom of the document. While he maintained that some of the wording of the statement did not sound like the way he spoke, he conceded that "some of it . . . appear[ed] accurate." The circuit court denied Conway's motion to suppress the statement.

The case proceeded to trial. Conway asserted the affirmative defense of duress, claiming that his older brother, Detric Conway, forced him to accompany him to the victim's home. In limine, the State moved to preclude any mention of Detric's criminal history or his character. The State argued that Detric was not scheduled to be a witness and there was no rule of evidence that would allow the defense to present such evidence. Conway's trial counsel replied that he had asserted the defense of duress, and "at least reputation evidence of Detric Conway would be relevant as it goes to the formation of the belief, the reasonableness of the belief that force—unlawful force would be used upon Mr. Samuel Conway's person. To exclude that would essentially exclude the defense from putting on an element of proof towards their affirmative defense of duress." The circuit court ruled,

> I will allow a certain amount of testimony by Mr. Conway of his knowledge as to Detric Conway's propensity for violence and his ability to complete or act upon any threats he may have made. But that would, by definition, preclude any testimony from third parties as to that. It'll have to come from Mr. Conway before the door is open. If you're asserting the defense of duress, you're talking about his state of mind. So when he takes the stand to testify about that, then he can testify to what prior knowledge he had about Detric Conway's propensity for violence and ability or information to act on any threats he may have made.

Conway subsequently made a general objection to the circuit court's ruling.

At trial, the State introduced Conway's statement. It was read into evidence by Cotten over Conway's hearsay objection. As he had at the suppression hearing, Cotten recounted his interview with Sam Conway. According to Cotten, assisted by Detective Tim Smith, he received a voluntary statement from Conway after he informed him of his Miranda rights. That statement was memorialized in a signed document that Cotten prepared.

According to the statement, Conway accompanied Detric to Dominic Hobson's house. While there, Detric said he needed money and asked if Conway and Hobson wanted to "hit a lick," which they understood to mean, rob someone. According to Conway, he and Hobson just looked at each other. Detric then threatened them with a sawed–off .22-caliber rifle. After that, they accompanied him to Eric Adams's house. Detric told them that no one would be home because Eric was at work. As instructed, he and Hobson went to the door to ask for Eric, while Detric hid in the bushes, carrying the rifle and wearing a ski mask. Mary Adams, who was Conway's aunt and Eric's mother, answered the door and explained that Eric was at work. Hobson asked to use the bathroom, and Ms. Adams let them in. As Ms. Adams turned to lock the door, Detric forced it open and shot her in the forehead. She fell back and blood began to run from her nose. As ordered by Detric, Conway and Hobson began searching for money and marijuana, but found none. Detric, however, found a shoe box containing baggies of marijuana and about $80. About that time, a car pulled into the driveway and sounded its horn. The three ran to the rear of the house and exited through a bedroom window. Conway hid in Detric's car until Detric and

Hobson arrived. They drove to Hobson's house, but when they did not hear the police, they returned to the crime scene and went back in. The robbers each took a pillow case and started taking items that they wanted. Conway took a PlayStation 2 and some games. Detric took some DVDs, Reebok tennis shoes, a piggy bank, and a watch. Hobson took "some girls shoes." They again returned to Hobson's house where they divided the money. Detric kept the marijuana. Detric returned later and retrieved the gun that he had thrown into the bushes. Three weeks later, Conway pawned the PlayStation 2.

Sergeant Tim Smith testified that he assisted Cotten with taking Conway's statement. He corroborated Cotten's account of how the statement was taken and that Conway had been Mirandized.

Lieutenant Lisa King of the Hot Springs Police Department testified that she was sent as a member of the department's crime-scene unit to the scene of Ms. Adams's homicide on March 14, 2005. She described the location of the victim's body and sponsored pictures of the forensic evidence collected at the crime scene. It was apparent to her that the house had been ransacked.

Eric Adams testified that the victim, his mother, was living with him, his wife, and his two small children at the time of the murder. On the day in question, he arrived home around 9:45 p.m. and found his two children sitting on a loveseat blocking the door. When he gained entry, he found Ms. Adams lying on the floor, a victim of an apparent gunshot wound. The house had been ransacked. He noted that some of his property was missing,

including his X-Box,[1] some shoes, some of his wife's jewelry, and some marijuana. According to Eric Adams, Sam Conway and Detric Conway are his cousins.

Arkansas Chief Medical Examiner, Dr. Charles Kokes, testified that he reviewed the autopsy that was performed on the victim by Dr. Daniel Konzelmann, who had since passed away. Dr. Kokes testified that he agreed with the autopsy findings that Ms. Adams died as the result of a gunshot wound to the upper inner surface of her right eyelid. The presence of stippling indicated that the shot was fired at close range—no more than six inches away. Arkansas State Crime Lab Firearm and Toolmark Examiner James R. Looney identified the bullet retrieved from the victim's skull as being .22 caliber. He opined that the bullet likely was fired from a rifle. The State concluded its case with the testimony of Hot Springs police detective Scott Lampinen, who explained how this "cold case" had been reviewed and resubmitted for prosecution after languishing for several years.

Conway made a directed-verdict motion, asserting that there was no proof to establish that he had a purposeful mental state to commit the underlying felony, aggravated robbery. Further, Conway contended that there was no evidence that he employed force or was armed with a deadly weapon. Additionally, Conway argued that he had proved his affirmative defense of duress. The State countered by arguing that there was adequate proof of the requisite intent and conduct not only by Conway but also by Conway's accomplices. The circuit court denied the motion. Although Conway relied on the affirmative defense of duress, he relied solely on his statement, as introduced by the State, and he did not put

---

[1]Conway stated that the gaming system that he stole was a PlayStation 2.

on any additional evidence.

On appeal, Conway first argues that the circuit court erred by failing to grant his motion for a directed verdict. He acknowledges that his statement to the Hot Springs police was admitted into evidence, but argues that it was insufficient. Citing *Davis v. State*, 115 Ark. 566, 173 S.W. 829 (1914), and *Francis v. State*, 189 Ark. 288, 71 S.W.2d 469 (1934), he contends that intent cannot be proved by the concession of the defendant unless there is other proof of such specific intent. Additionally, Conway argues that to sustain the charge, the State was required to prove that he, personally, committed armed robbery. He notes that in his statement, he denied being a willing participant and that the remainder of the State's witnesses "proved no more than that Mary Adams was shot and killed, and items of property were missing from her home." He asserts that their testimony "in no way tied Sam Conway to the crimes." Conway also argues that the State failed to prove he was an accomplice of Detric and Hobson because it failed to show that he aided in planning or committing the offense with the purpose of promoting or facilitating the aggravated robbery or murder. He asserts that the proof supported his duress defense.

When we review the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See, e.g.*, *Turner v. State*, 2014 Ark. 415, 443 S.W.3d 535. That means that we consider only the evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture.

SLIP OPINION

*Id.*

Our criminal code in pertinent part states:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons:

(A) The person commits or attempts to commit:
. . .
(vi) Aggravated robbery, § 5-12-103;
. . .
(B) In the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of a person under circumstances manifesting extreme indifference to the value of human life.

Ark. Code Ann. § 5-10-101. A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person and is armed with a deadly weapon or represents by word or conduct that he is armed with a deadly weapon. Ark. Code Ann. §§ 5-12-102 to -103(a)(1), (2). A firearm is a "deadly weapon." Ark. Code Ann. § 5-1-102(4)(A). A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1). In cases where the theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991). A person acts as an accomplice of another person in the commission of an offense if, with the requisite intent, he aids, agrees to aid, or attempts to aid the other person in commission of the offense. Ark.

Code Ann. § 5-2-403(a)(2). The following factors are relevant in determining the connection of an accomplice with the crime: presence of the accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation. *Purifoy*, *supra*.

In the case before us, there is ample proof of Conway's joint participation with Detric. He accompanied Detric to the residence that the victim shared with Eric Adams, with the express purpose of committing an aggravated robbery. Conway, who was related to the victim, and Hobson, who asked to use the bathroom, persuaded Ms. Adams to open the locked door while Detric hid in the bushes with a firearm. Conway helped search the residence for money and drugs and collected and kept his own share of the personal property that was stolen as well as a share of the stolen money. Contrary to Conway's assertion, it was not necessary that he participate in every aspect of the crime so long as he was acting as an accomplice. *Id.*

Conway's reliance on *Davis* and *Francis* is misplaced as neither is an accomplice-liability case. Conway's general contention is that his confession could not show intent. However, in this case, his intent to commit an armed robbery and murder was inferred from the actions of his accomplice. Conway's own statement to police provided direct evidence of Detric's intent to commit an aggravated robbery, and Conway's account of how Detric murdered Ms. Adams—shooting her in the forehead at very close range—was substantial evidence of "caus[ing] the death of a person under circumstances manifesting extreme indifference to the value of human life." *See* Ark. Code Ann. § 5-10-101. When a

9

defendant incurs criminal liability as an accomplice, the law draws no distinction between the actions of the principal and those of the accomplice. *Purifoy*, *supra*.

Finally, Conway's invitation to this court to consider the evidence tending to prove his affirmative defense of duress does not comport with the standard of review. As noted previously, when we review a challenge to the sufficiency of the evidence, we consider only the evidence that supports the verdict. *Turner, supra.* Because the evidence supporting Conway's duress defense does not support the verdict, we do not consider it in our review. *Id*.

For Conway's second point, he argues that the circuit court erred by granting the State's motion in limine limiting proof of Detric's propensity for violence to Conway's testimony. Conway asserts that the circuit court's ruling violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and that it impaired his right to put on a complete defense. We recognize that duress, when established by the evidence, has potential merit as a defense. However, it cannot be reviewed here because Conway failed to proffer any of the evidence that he now claims was excluded by the circuit court. Failure to proffer this evidence precludes our review of this issue on appeal. *Edison v. State*, 2015 Ark. 376, 472 S.W.3d 474.

In Conway's third point on appeal, he challenges the circuit court's failure to suppress the statement he made to police while he was in custody. He argues that the circuit court erred by denying his motion to suppress his statement and thereafter by allowing the statement to be read into the record and introduced into the record at trial. He highlights

SLIP OPINION

the evidence tending to show the unreliability of the police officers' testimony, including their hazy recollections, missing Miranda-rights form, and destruction of the handwritten notes. Further, he cites his own lack of recollection whether he signed the Miranda-rights form. He does, however, acknowledge that he recalled speaking with Detectives Cotten and Smith about what had happened and admitted that it appeared to be his signature on the typewritten statement. As noted previously, the statement itself recites that "he was read his Miranda rights" and that "he signed and initialed the rights form."

We review a circuit court's decision denying a defendant's motion to suppress a confession by making an independent determination based on the totality of the circumstances. *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565. We reverse the circuit court's ruling only if it is clearly against the preponderance of the evidence. *Id.* A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Fritts v. State*, 2013 Ark. 505, 431 S.W.3d 227. A person subject to a custodial interrogation must first be informed of his right to remain silent and right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.*

While Conway challenges whether he was read his Miranda rights, he does not assert, nor present any evidence, that he did not understand what was meant by the phrase "Miranda rights," or that he did not knowingly and voluntarily waive the rights granted to him by the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution. We cannot ignore that Conway characterized his reading skills as "pretty good" and that the

11

SLIP OPINION

document recites that Conway made his statement after having been "read his Miranda rights and he said he understood them," and "he signed and initialed the rights form including the waiver and consent section of the form." This statement remains unchallenged by any evidence. Conway does not dispute that it appeared to be his signature on the statement or that he made a voluntary statement to the Hot Springs police. While he professed not to recall everything he told them, he acknowledges that at least portions of the document appeared to be "accurate." Accordingly, we hold that the circuit court's decision to not suppress the statement was not clearly against the preponderance of the evidence.

Conway next argues that the circuit court erred by failing to grant a mistrial due to the State's improper remarks during closing arguments. He asserts that the following remarks should have warranted a declaration of a mistrial, sua sponte.

> As was testified, this investigation took a bunch of different turns over nine months from the time it originally happened 'til the time Sam Conway came and gave a statement. We could have put on a lot of testimony about what had happened during that mean time, but that's not really relevant and would just be a waste of your time. Just know the Hot Springs Police Department did a lot of work on this case that was not presented to you. They took it seriously and they worked it very hard, and they got some good breaks there at the end.

He acknowledges that his trial counsel failed to object, but asserts that the circuit court should have intervened pursuant to the authority recognized in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). Conway asserts that reversal is mandated any time a prosecutor goes far beyond the facts in the record to obtain a verdict.

The above-quoted language, while unnecessary, does little more than try to excuse the amount of time that had elapsed between the commission of the murder and Conway's

trial. It was not material to any of the elements of the crimes charged, and contrary to Conway's assertion, the statement was not actually outside the proof presented at trial inasmuch as the State put on the testimony of Detective Scott Lampinen to explain why it took so long to bring the case to trial. We hold that the unobjected-to statement was not so prejudicial as to fall within a *Wicks* exception.

For his final point on appeal, Conway argues that the circuit court erred by giving a nonmodel and confusing jury instruction. At trial, the circuit court granted the State's request to insert accomplice-liability language, "acting alone or with one or more other persons" into the model-jury instruction for aggravated robbery. He asserts that it was an incorrect statement of the law, and it duplicated the model accomplice-liability instruction. Conway notes that he was the only defendant in the case.

Nonmodel jury instructions should be given only when the circuit court finds that the model instruction does not state the law or does not contain a needed instruction on a subject. *Henderson v. State*, 284 Ark. 493, 684 S.W.2d 231 (1985). When reviewing whether a jury instruction is ambiguous, this court never considers it in artificial isolation; it must be judged in the context of the instructions as a whole. *Estelle v. McGuire*, 502 U.S. 62 (1991).

Here, Conway undercuts his own argument by noting that the inserted language duplicated the accomplice-liability instruction that was also given to the jury. At worst, the nonmodel instruction merely emphasizes the fact that Conway could be liable for the crime without committing every aspect of it. This is not an incorrect statement of the law. *See*

*Purifoy, supra.*

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2015), the record has been reviewed for all objections, motions, and requests that were decided adversely to Conway and no prejudicial error has been found.

Affirmed.

*Janice Vaughn*, Arkansas Public Defender Commission, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.