Cite as 2020 Ark. 316

# SUPREME COURT OF ARKANSAS
No. CR-19-981

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 8, 2020 |
| CURTIS DORSEY | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-17-3259] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARRY SIMS, JUDGE |
| | | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Curtis Dorsey was convicted of first-degree murder by a Pulaski County Circuit Court jury and sentenced to a term of life imprisonment plus fifteen years for a firearm enhancement. For reversal, Dorsey contends the circuit court erred by (1) admitting hearsay statements; (2) by admitting two in-court identifications; and (3) by admitting evidence of his efforts to flee law enforcement in Texas and West Virginia. We affirm.

## I. *Background*

On September 5, 2016, Dorsey shot and killed his business partner, Sharniece Hughes, outside her home in Little Rock. Dorsey and Hughes operated a food trailer together; however, on the day of the murder, Hughes indicated her intent to buy Dorsey out of his share in the business. That same day, Dorsey was at Hughes's home, returning the food trailer using a black Toyota Tundra pickup truck owned by Hughes. The two conversed

for some time in Hughes's driveway. Dorsey then shot Hughes five times and drove off in the truck.

Following the shooting, Dorsey abandoned his job as a mental health technician and his food trailer business. He was not located until October 16, 2016, when police stopped him in El Paso, Texas. Dorsey was pulled over driving the same black truck that was last seen leaving the site of the murder. When police ordered him to exit the vehicle, Dorsey drove off, and a chase ensued, reaching speeds in excess of one hundred miles per hour. Dorsey ultimately evaded El Paso police by driving across the border into Mexico.

Dorsey was apprehended on July 13, 2017, in Clarksburg, West Virginia. The U.S. Marshals received a tip from law enforcement in Arkansas that Dorsey had rented an apartment in Clarksburg using a Massachusetts driver's license with the name Maxwell Akuma. When officers surrounded Dorsey's apartment and ordered him out, Dorsey initially complied before attempting to flee through his apartment window. Dorsey jumped out the third-story window and broke his leg upon landing, at which time officers arrested him. When paramedics arrived at the scene, Dorsey identified himself as Maxwell Akuma.

At trial, five eyewitnesses testified to the events surrounding the murder. S.H., Hughes's daughter, testified that shortly before the shooting, she saw Dorsey outside in the black truck. Hughes's neighbor, Juan Antonio Reyes, stated he stepped outside after hearing gunshots and saw an individual driving off in the black truck. Reyes recognized this man as the individual who would pick up the food trailer from Hughes's home and later drop it off. Another neighbor, Shannon Branham, testified she heard several gunshots and opened her

2

door to see Hughes lying on the ground and a black truck turning off the street. Lakierra Madden testified she overhead two individuals conversing outside Hughes's home. She said that she heard a gunshot, looked out her window, and saw a man shoot a woman multiple times. Madden testified the man then got in a black truck and drove away. Finally, Hughes's mother, Blanche Spencer, stated Curtis was at the house on the day of the murder unloading the trailer.

At the conclusion of the evidence, the jury convicted Dorsey of first-degree murder and sentenced him to life imprisonment plus fifteen years with a firearm enhancement. Dorsey now brings this appeal.

## II. *Hearsay Statements*

On appeal, Dorsey first argues the circuit court abused its discretion by allowing witnesses to testify as to statements Hughes made to them on her intent to buy Dorsey out of his share of their food-trailer business on the day she was killed. Prior to trial, Dorsey made an oral motion in limine to exclude this testimony, arguing it was hearsay that did not fit within any exception. The State argued the statements were admissible under the state-of-mind exception in Rule 803(3) of the Arkansas Rules of Evidence. The circuit court agreed with the State and admitted the statements under the state-of-mind exception.

Matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court. *See, e.g.*, *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001). We will not reverse a trial court's ruling on a hearsay question unless an appellant can demonstrate an abuse of discretion. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002).

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is not admissible unless it falls within an enumerated exception. Ark. R. Evid. 802. Statements of a declarant's state of mind are admissible under Rule 803(3), providing in pertinent part:

> (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

This court has repeatedly held that testimony concerning the victim's intent to do something in the future is admissible pursuant to Rule 803(3). *E.g.*, *King v. State*, 2019 Ark. 114, 571 S.W.3d 476.

At trial, S.H. testified that on the day of the murder, she overheard her mother tell a man named Curtis that she was going to buy him out of the business. Spencer later testified that Hughes had told her she was buying Dorsey out. Spencer told Hughes that when she went into work the next morning, she would go by the credit union to see if she could help.

Dorsey argues that Hughes's statements indicating her intent to buy him out of their business fall outside the Rule 803(3) exception because they reflect a then-existing financial condition rather than an existing mental, emotional, or physical condition. However, this court has not limited Rule 803(3) to exclude statements of financial condition. In *Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004), we noted that statements relating to the victim's intent to save money in her investment account to buy her daughter a car reflected an intent

4

to do something in the future. Likewise, Hughes's statements on buying Dorsey out of the business reflects her plan or intent to do something in the future. We hold the circuit court did not err in finding the statements went to Hughes's state of mind at the time of her death.

III. *In-Court Identifications*

For his second point, Dorsey claims the circuit court erred by allowing Juan Antonio Reyes and El Paso police officer Mizrahaim Delgado to identify him in court. Before trial, Dorsey filed a motion to exclude any in-court identification made by Reyes based on his initial inability to identify Dorsey from a photographic lineup. Dorsey also moved to suppress Delgado's testimony. The circuit court denied both motions.

This court will not reverse a circuit court ruling on the admissibility of an in-court identification unless the ruling is clearly erroneous under the totality of the circumstances. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). Reliability is the linchpin in determining the admissibility of identification testimony. *Hayes v. State*, 311 Ark. 645, 846 S.W.2d 182 (1993). In determining reliability, this court considers the following factors: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483.

It is for the circuit court to determine if there are sufficient aspects of reliability in an identification to permit its use as evidence and then it is for the jury to determine the credibility of identification testimony. *Milholland v. State*, 319 Ark. 604, 893 S.W.2d 327 (1995). Even when the process is suggestive, the circuit court may determine the identification sufficiently reliable for the matter to be decided by the jury. *King v. State*, 323 Ark. 558, 916 S.W.2d 725 (1996). This court will not inject itself into the process of determining reliability unless there is a substantial likelihood of misidentification. *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990).

Dorsey takes issue with the admission of testimony by Officer Delgado. Delgado testified that on October 16, 2016, he responded to a call regarding a stolen truck matching the Arkansas plates of the black Toyota Tundra truck that was seen driving away from the murder. Delgado located the truck in a restaurant parking lot and witnessed a man matching Dorsey's profile enter the truck. Delgado stopped the truck shortly thereafter. Advised that the driver was a murder suspect, Delgado got out of his patrol car and brandished his firearm as a precautionary measure. He then ordered the driver to exit the vehicle. Delgado testified that he could see the driver through the rearview mirror and side mirrors. Instead of complying with Delgado's order, the driver fled in the black truck, evading capture by crossing the Mexican border. After the pursuit, Delgado was shown Dorsey's driver's license and confirmed that Dorsey was the driver.

The State counters that Delgado never made an in-court identification but rather testified to the details of a pretrial, out-of-court identification. Yet, throughout his testimony,

6

Delgado repeatedly referred to the man he stopped as the "defendant." He also responded affirmatively when asked if Dorsey was the individual that he saw driving the truck. Despite the State's contention that Delgado never pointed at Dorsey and identified him as the driver, the record makes clear that Delgado identified Dorsey throughout his testimony.

Dorsey now contends Delgado's identification was inherently unreliable because he did not make personal contact with the driver and, therefore, did not have a good opportunity to observe the driver's face. Further, Dorsey claims that Delgado identified Dorsey only after seeing his driver's license. He asserts that this identification was unduly suggestive because he was already suspected as the driver. Nevertheless, Delgado's testimony was sufficiently reliable. He identified a man matching Dorsey's profile and had an unobstructed view of Dorsey's face through the truck's rearview mirror. Delgado never identified another individual, nor has he demonstrated uncertainty that Dorsey was the driver. Delgado also identified Dorsey shortly after the pursuit. Moreover, Delgado stopped the same black truck that Dorsey was seen driving the day of the murder. In considering the totality of the circumstances, we do not perceive a substantial likelihood of misidentification and conclude that the circuit court did not err in finding Delgado's testimony reliable.

Additionally, Dorsey objects to Reyes's testimony identifying him as the individual who drove away from the murder scene in the black truck. He argues the circuit court erred in admitting this testimony based on Reyes's initial inability to identify him from a photographic lineup. The State asserts Reyes did not identify Dorsey in court. We agree. Rather than identifying Dorsey as the driver, Reyes testified he recognized the individual

7

driving the black truck as the same man who would drop off the food trailer at Hughes's home. Because Reyes did not provide an in-court identification, we find no error in admitting his testimony.

IV. *Evidence of Flight*

Finally, Dorsey argues the circuit court erroneously admitted testimony of his flights from law enforcement in Texas and West Virginia. He contends the testimony violated Rule 404(b) of the Arkansas Rules of Evidence, which provides:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The first sentence provides the general rule excluding evidence of a defendant's prior bad acts, while the second sentence provides an exemplary, but not exhaustive, list of exceptions to that rule. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. Testimony of other bad acts is admissible if it is independently relevant to the main issue, that is, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal. *Camp v. State*, 2011 Ark. 155, 381 S.W.3d 11. When evidence of another bad act reflects consciousness of guilt of the commission of the crime charged, it is independently relevant and admissible under Rule 404(b). *Banks v. State*, 2010 Ark. 108, 366 S.W.3d 341. Evidence of flight is admissible to show consciousness of guilt, even if the flight was not immediately after the alleged commission of the crime. *Hayes v. State*, 2014 Ark. 104, 431 S.W.3d 882. In reviewing the admission of evidence under Rule 404(b), we have noted that

8

a circuit court has broad discretion in deciding evidentiary issues, and its decisions will not be reversed absent an abuse of that discretion. *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289.

Even evidence otherwise admissible under Rule 404(b) may be excluded if the danger of unfair prejudice substantially outweighs its probative value. *See* Ark. R. Evid. 403. The balancing of probative value against prejudice under Rule 403 is a matter left to the circuit court's sound discretion. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). This court reviews decisions to admit evidence over a Rule 403 objection under an abuse-of-discretion standard as well. *Id.*

Dorsey first challenges the admission of Officer Delgado's testimony on his efforts to evade arrest in El Paso. Dorsey concedes that evidence of flight is independently relevant to demonstrate consciousness of guilt; but he argues the evidence is more prejudicial than probative. He claims there is insufficient proof that he was the individual stopped by Delgado. This argument lacks merit because Delgado identified Dorsey as the driver. Delgado witnessed a man matching Dorsey's profile get into the stolen black truck and, after stopping the vehicle, viewed Dorsey's face through the rearview mirror. Dorsey claims Delgado did not have an adequate vantage point to identify him as the driver, but this argument goes to the testimony's weight rather than its admissibility. As discussed above, the reliability of Delgado's identification is a matter for the jury to determine. *See Turner v. State*, 2014 Ark. 415, 443 S.W.3d 535. Evidence of Dorsey's flight from police in a truck that was

9

last seen leaving the murder is independently relevant to demonstrate guilt. Accordingly, we hold there was no abuse of discretion.

Dorsey also claims error in the admission of testimony relating to his arrest in West Virginia. In the circuit court, he filed a motion in limine in which he argued that evidence of his arrest in West Virginia should be excluded because the danger of unfair prejudice substantially outweighed its probative value. The court denied the motion with the caveat that references to drugs found on the premises be excluded. On appeal, Dorsey expands his argument, contending his arrest should have been excluded due to its remoteness in time from the murder, and because there was no evidence that he was aware he was arrested for Hughes's murder. It is well settled that an appellant is bound by the scope and nature of the arguments made at trial and may not change or enlarge those grounds on appeal. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469. Because Dorsey raises this argument for the first time on appeal, it is not preserved for our review. Like Delgado's testimony, evidence of Dorsey's attempted flight from U.S. Marshals in West Virginia is independently relevant to demonstrate a consciousness of guilt. The circuit court did not err in admitting testimony of Dorsey's arrest.

V. *Rule 4-3(i) Review*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Dorsey. No prejudicial error has been found.

Affirmed.

10

BAKER, J., concurs without opinion.

*William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.